## Hays, et al. v. Combs.

(Decided October 23, 1917.)

### Motion to dissolve injunction.

1. Elections—Statement of Expenses Must Be Filed by Campaign Committee or Persons in Charge of Campaign Before Certificate

of Election or Nomination Can Be Issued.—Under section six of the corrupt practice act (Acts of 1916), every candidate, or campaign committee, or person in charge of campaign, must within thirty days after the election file a statement of expenses, as provided in the act, and no certificate of election or nomination can be issued until such statement has been filed.

2. Elections—Campaign Committee or Persons in Charge of Campaign Defined.—Whenever a candidate or a group of candidates has a designated campaign committee or person or persons in charge of his or their campaign, then such person or persons must file the statement mentioned in the corrupt practice act, but persons who in their individual capacity and not as members of a campaign committee, or persons not in charge of a campaign, who contribute to a campaign or support a candidate or exert themselves to secure his success, need not file such statement, as they are not to be regarded as campaign managers.

3. Elections—Campaign Committees—Evidence as to Who Are.— Evidence that persons supporting a candidate expended money in his behalf, or exerted themselves in his behalf, is competent as showing in a circumstantial way that they were in charge of his campaign or constituted his campaign committee, but this evidence alone is not sufficient to show that they were such committee or were in charge of the campaign.

4. Elections—Injunctions—Board of Election Commissioners May Be Compelled by a Mandatory Injunction or by a Mandamus to Issue Certificate.—When a candidate is entitled to a certificate of nomination or election, he may by mandamus or mandatory injunction, whichever will more speedily accomplish the desired result, compel the election commissioners to issue him the certificate.

5. Injunction—Injunction Bond—When Deemed to Have Been Executed.—Although the order granting the injunction does not, as provided in section 278 of the Civil Code, fix the amount of the bond that should be executed or prescribe its terms, if, in fact, a bond was executed in proper time and manner, it will be sufficient.

HOPKINS & HOPKINS for petitioners.

A. J. MAY and JOHN CAUDILL for respondent.

OPINION BY JUDGE CARROLL—Overruling motion to dissolve injunction.

At the August, 1917, primary election in Knott county Farris Hays and Andrew Combs were the contending Democratic candidates for the nomination for sheriff and upon the face of the returns as made by the election officers Combs had a plurality of the votes. Within the time fixed by the corrupt practice act Combs filed with the proper officers the post-election expense statement required by the act and demanded of the election commis-

sioners a certificate showing that he was the nominee of the Democratic party for the office of sheriff, but the election commissioners refused to issue the certificate. Thereupon Combs filed his petition in equity in the Knott circuit court against D. W. Hays, S. R. Blair and John Sturgill, the board of election commissioners for Knott county, asking a mandatory injunction to compel them to reconvene and issue to him a certificate of nomination.

The defendant, John Sturgill, in a separate answer, averred that he was ready and willing to sign and deliver to Combs the certificate, but could not do so because the other two members of the commission refused to assemble and act in connection with him. The defendants, D. W. Hays and S. R. Blair, in a joint answer, set up that Bob Adams, Irving Napier, Frank Gerhart, Green Gerhart, H. H. Smith, Alonzo Young, and R. L. Conley composed the campaign committee of Combs during his candidacy for the nomination for the office of sheriff, and were in charge of his campaign; that although frequently requested so to do by the election commissioners, neither this campaign committee nor any one of them would file the statement required by the corrupt practice act, and that solely because of their failure to do so they had refused to issue to Combs the certificate of nomination demanded by him.

In a reply to this answer of Hays and Blair, Combs denied that the parties named, or any of them, constituted his campaign committee, or were managers of his campaign, or that they were required by the corrupt practice act to file any statement of expenses.

The case coming on to be heard before the Hon. A. T. Patrick, judge of the Knott circuit court, he issued a mandatory injunction directing Hays, Blair and Sturgill, the county election commissioners of Knott county, to assemble on or before October 16, 1917, at the office of the sheriff in Knott county, at Hindman, and issue to Combs a certificate of nomination as the Democratic nominee and Democratic candidate for sheriff of Knott county to be voted for at the November election, 1917, and the case was retained on the docket to enforce obedience to this order of injunction.

Hays and Blair, having procured from Judge Patrick an order giving time to make a motion before a judge of the Court of Appeals to dissolve the order granting the injunction, have made the motion before me, and

pursuant to a rule of court, I have had in the hearing and disposition of the motion the assistance of Chief Justice Settle and Judges Thomas and Clarke.

It is provided in section six of the corrupt practice act (see Acts of 1916, page 53) that "Every candidate, as previously mentioned in this act, and every campaign committee, person or persons in charge of said campaign, shall, within thirty days after the election, caucus, convention or primary election held to fill any office or place for which such person may be a candidate, make out and file with the officers above mentioned a statement subscribed and sworn to as indicated in previous sections, which statement shall set forth in detail all sums of money contributed, disbursed, expended or promised by him, and to the best of his knowledge and belief, by any person in his behalf, wholly or in part, endeavoring to secure his nomination or election to said office, and also all sums of money contributed, disbursed, expended or promised by him in support and in connection with the nomination or election of any other persons at such election, primary, caucus or nominating convention, showing the dates when, persons to whom and the purpose for which all such sums were paid, expended or promised; provided, however, that the statement provided for in this section shall relate to matters occurring after the filing of the first statement provided for in this act."

And in section seven that "No officer or board authorized by law to issue certificates of election or nomination shall issue any such certificates to any person until the statements required by this act shall have been made and filed as required."

So that if Adams, Napier, the Gerharts, Smith, Young and Conley, or any one or more of them, constituted a campaign committee for Combs during his candidacy for the nomination for the office of sheriff, or were in charge of his campaign for this office, then it was the duty of this committee, or the person or persons in charge of his campaign, to file the statement required by section six, and the board of election commissioners were entirely within their rights in refusing to issue the certificate until this statement by the campaign committee, or person or persons in charge of his campaign, had been filed.

It will, therefore, be seen that under the pleadings the correctness of the order made by Judge Patrick depends entirely on the question whether the parties named,

or any of them, composed the campaign committee for Combs or were in charge of his campaign. It will further be seen that this issue involves purely questions of fact, and so we will turn to the record for the purpose of ascertaining from it whether the parties named composed the campaign committee for Combs or were in charge of his campaign.

Combs on the hearing before Judge Patrick testified that he had no campaign committee, or any person or persons in charge of his campaign except himself; that no one or more of the persons named by the election commissioners in their answer as his campaign committee composed his campaign committee or were in charge of his campaign, although all of them as individuals, except one, supported him for the office; that he had a great many personal friends and supporters in the county, and that he talked to many of them frequently about his race.

The persons named as the campaign committee of Combs, giving evidence in the form of affidavits, which were read on the hearing, said, in substance, that Combs had no campaign committee or person or persons in charge of his campaign, and that no one or more of them composed his campaign committee or were in charge of his campaign.

On the other hand, there was evidence in the form of affidavits by several persons to the effect that at different times and places during the campaign the persons named as members of this alleged campaign committee had said that they were active supporters of Combs and had spent and were spending money in the election for him.

It may be true that Adams, Napier, the Gerharts, Smith, Young and Conley did as individuals support Combs in his race, and did as individuals furnish money for use in his campaign, and did as individuals on the day of the election and before resort to corrupt practices to secure his nomination, but the doing of these acts and things by these men in their individual capacities did not in themselves constitute them his campaign managers, or put them in charge of his campaign, or make it necessary that they should file the statement required by the act to be filed by campaign committees or managers. The act does not contemplate that every individual who supports a candidate, or who contributes to his campaign, or who exerts himself to secure his suc-

cess, should file a statement of his acts or doings. Such a requirement would be a foolish thing.

But it has for many years been quite a common practice in this state for candidates and groups of candidates to have publicly named and known campaign committees or persons who as party managers are put in control of the conduct of the campaign, and it was the intention of the act that such persons or such committees should make the statement required by the act; and whenever any candidate or group of candidates has a designated campaign committee or person or persons in charge of his or their campaign, then such person or persons or committee must file the statement mentioned in the act before any certificates of nomination or election can be issued to the candidate or candidates having such campaign committee or person or persons in charge of his or their campaign.

The evidence in behalf of Hays and Blair tended to show that a considerable sum of money was used in the campaign by friends of Combs for illegal and corrupt purposes, but the evidence of these witnesses has no bearing except in a circumstantial way on the issue as made by the pleadings, which confine the inquiry to the single question whether Combs had a campaign committee or persons in charge of his campaign, and on this issue the weight of the evidence shows that he did not have any campaign committee or any persons in charge of his campaign. We do not, however, wish to be understood as saying that the evidence of these witnesses, showing expenditures of money by these designated persons, would not have been circumstantially competent for the purpose of showing that they were his campaign committee or in charge of his campaign if there had been other evidence to show that he had a campaign committee or persons in charge of his campaign.

Subsection 3 of section 278 of the Civil Code provides that the court, judge or officer granting an injunction shall in the order fix the amount of the bond to be given and prescribe its terms; and section 279 of the code provides that the order of injunction shall not be issued by the clerk until the bond required has been executed. And so it is argued by counsel for Hays and Blair that as Judge Patrick did not in the order granting the injunction make any provision for the execution of a bond or prescribe its terms, the order of injunction should not have issued, and for this reason it should be

dissolved. In support of this position our attention is called to the case of St. Bernard Coal Co. v. Pittsburg Coal Co., 112 Ky. 418. But in that case, as appears from the opinion, no bond was ever executed or order of injunction issued by the clerk, while in this case, although the order made by the judge did not provide for the execution of a bond, the requisite bond is in the record and appears to have been executed and approved by Judge Patrick at the same time that the order of injunction was made. We think this a substantial compliance with the code.

The further suggestion has been made that mandamus and not a mandatory injunction is the proper remedy in a case like this. We think either of these remedies, whichever is more available and will more speedily accomplish the desired result, may be resorted to, and the plaintiff may elect which he will pursue.

Wherefore, the other judges concurring, the motion to dissolve the injunction is overruled.