## Gallagher v. Campbell et al.

(Decided Feb. 23, 1937)

A. T. W. MANNING and T. T. BURCHELL for appellant.

H. H. OWENS for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

There were two commissioners of Corbin to be elected at the November, 1935, election. Gallagher, Sammons, Campbell, and Eagle were the candidates. The latter two received majorities and the certificates of election were issued to them. Gallagher and Sammons instituted separate contests against both of their successful opponents. The trial court, the Honorable E. Bertram, presiding as special judge, decided the contests in favor of the contestees. Only Gallagher appeals.

Corbin is located in both Whitley and Knox counties. The appellee Campbell resided in Knox and the appellee Eagle in Whitley county. The contests were brought in Whitley circuit court. Campbell entered a seasonable objection to the jurisdiction of the court, but it was overruled. Without waiving the question, he proceeded to defend. Section 1596a-12, Statutes, governing contests of elections, provides that "the contest shall be made by the filing of a petition in the circuit court of the county where the contestee resides, except where the officer is one elective by the voters of the whole state, in which event the petition shall be filed in the Franklin Circuit Court.". Since Campbell did not reside in Whitley county, the question arises whether under the peculiar geographical condition the Whitley circuit court had jurisdiction of the contest of Campbell's election, since he did not reside in that county. It must be borne in mind that Gallagher was a candidate for the office for which there were three other men running. Therefore, his contest was not against his successful opponents jointly, but against each separately. He might have contested the election of Eagle and not Campbell, or he might have instituted separate proceedings against both. Burns v. Lackey, 171 Ky. 21, 186 S. W. 909. We see no reason, however, why both contests should not have been united if the matter of jurisdiction were not involved. But as to the matter of being necessary parties, no candidate was required to be made a party in his contest of the election of another. Kirby v. Creech, 235 Ky. 816, 32 S. W. (2d) 419. The right of contest of an election is purely statutory and it has been the policy of interpretation and application that the terms of the statute should be strictly observed. Adams v. Magisterial District No. 5 of Perry County, 254 Ky. 113, 71 S. W. (2d) 21; Gross v. Ball, 258 Ky. 730, 81 S. W. (2d) 409. The statute, without qualification or alternate, fixes the forum of a contest as the county of the residence of the contestee. Ratliff v. Tackett, 209 Ky. 588, 273 S. W. 441. Since the jurisdiction was not lodged in the Whitley circuit court, we are of opinion that the court should have dismissed the contest against Campbell on that ground. It is not necessary, therefore, to consider the evidence as it related to the allegations of a violation of the Corrupt Practice Act by him.

The violation of the Corrupt Practice Act (sections

1565b-1 et seq.) by the contestee Eagle is charged to have been committted in many particiulars, but there was a failure of evidence as to most of the charges. Indeed, the large volume of testimony reflects a big "fishing expedition," with an experience like that so often had by even the most persistent fishermen—many casts, few strikes, no fish.

The charges concerning which there was any evidence relate to a conspiracy between the officers of the First National Bank of Corbin and Eagle to elect him for several unlawful and wrongful purposes. These included the dismissal of suits brought by and on behalf of the city by the incumbent administration against the bank and a number of individuals to collect funds alleged to have been wrongfully disbursed and unpaid tax, water, and light bills. It was also charged that to further that unlawful conspiracy certain bribery had been committed and threats and promises made.

The unsuccessful candidate, Sammons, testified that Calvert, an officer of the bank, told him his reason for supporting Eagle was to defeat Gallagher because he had moved the city's deposits from his bank to that of a competitor and that "he wanted to beat Gallagher if it cost him $15,000." Several witnesses, some of whom were indebted to the bank and others not, testified that the bank's officers had solicited their support of Eagle, but in every instance it was shown to have been a perfectly legitimate request and usually it was accompanied by the condition that the citizen could see his way clear to do so. A greater number of customers of the bank, however, testified that they had not been solicited by its officers to vote for Eagle. There is some evidence that another bank official had used money and liquor corruptly, but in most instances the witnesses were impeached in one way or another and all of their testimony was denied. A few contributions were received by the officers of the bank for use in behalf of Eagle, and it appears they were not reported by him in his statement of expenses. The only evidence tending to show any agreement or understanding between the bank's officers and Eagle, or to show any authorized representation, is that Eagle kept some of his election cards in the bank and would go in there to get them for distribution. Also, that in a conversation about a

position for his wife, a witness related that Eagle stated, ''I am not directly promising any jobs to anybody, but I think that Mr. Baker or some of the folks at the bank are lining out the help.'' It may be observed in passing that the wife did not get a job. The bank officers and Eagle categorically denied there was any agreement or understanding between them of any sort, although their support was well known and most active.

There was a rumor and general impression that Eagle had opposed an audit of the city's accounts or rather the contingent fee contract made with the auditors, and promised if he should be elected that the contract would be canceled and the claims and suits to collect the alleged unpaid tax and public service bills would be dismissed. It was also understood that Eagle would favor the re-employment of the former tax collectors charged with responsibility for the delinquencies. But there was some evidence that there was no such general understanding. It appears that this was a very prominent question of municipal policy, and other auditors had been employed who reported there were no delinquencies. Several vote-sellers testified to having received money and liquor from three or four different men who were active in behalf of Eagle. But there is an absence of evidence tending to show any knowledge or authority on the part of the candidate. Eagle insisted he made no statement concerning his position on the matter of suits and claims. He likewise denied and disavowed any and all illegal or corrupt use of money or liquor in his behalf.

In many election contests presented to the court for review, we have written that a mere denial by the candidate of any knowledge or responsibility for corrupt practices of others in his behalf could not be accepted as conclusive. This was because the circumstances and conditions contradicted the statements of innocence, that is, the candidate's actions spoke louder than his words. We have also written that a candidate is not to be held accountable if overzealous or lawless friends commit offenses in his behalf without notice or knowledge or acquiescence on his part. Howard v. Cockrell, 231 Ky. 278, 21 S. W. (2d) 455. The evidence should do more than merely raise a suspicion even

though the suspicion be strong that the candidate knew of such violations. Douglas v. Greene, 231 Ky. 44, 20 S. W. (2d) 1026; Prewitt v. Caudill, 250 Ky. 698, 63 S. W. (2d) 954. The contestee Eagle is not to be held accountable for the failure to account for the several contributions received by the officers of the bank, for the proof fails to show any status of principal and agent or that they were acting or authorized to act as a campaign committee. Hays v. Combs, 177 Ky. 355, 197 S. W. 788.

Wherefore, the judgment is affirmed.